## Chicago Trust & Savings Bank v. Frank T. Kinnare, Administrator of the Estate of Charles F. Remick, Deceased.

1. PARTNERS—*Power to Execute Judgment Notes.*—A member of a partnership can not execute in the firm name a valid power of attorney to confess a judgment unless specially authorized to do so.

Chicago Trust & Savings Bank v. Kinnare.

2. SAME—*Liability of Partners after Dissolution.*—Where a partnership is dissolved by the withdrawal of a member and the remaining partners continue to do business by the same name, without giving notice of the dissolution, they will be liable to third persons, not having notice of such withdrawal, or that such withdrawing member was acting for himself alone, for what he does in the firm name.

Assumpsit, on a promissory note. Appeal from the Circuit Court of Cook County; the Hon. FRANCIS ADAMS, Judge, presiding. Heard in this court at the October term, 1896. Affirmed. Opinion filed November 5, 1896.

## STATEMENT OF THE CASE.

On the first day of September, A. D. 1887, Wm. H. Ward, J. C. Goldthwaite and C. F. Remick entered into a copartnership, under firm of "Ward, Goldthwaite & Co." to engage in the business of "selling hats, caps and gloves at wholesale," in the city of Chicago, said partnership to continue three years from date.

Remick was the financial man of the firm, who furnished the bulk of the capital, or, as stated in the' articles of agreement, "Remick being understood to be worth $100,000, is expected to give strength and credit to said firm, so that it will have a first class rating and be able to purchase goods for said business at lowest prices, and also from time to time to advance moneys as he finds the convenience of said business may require, but said Remick is not expected, except at his own option, to give his personal services to said business."

The articles of copartnership contain the usual details as to the business, the respective duties of the three partners, and ample provisions against the improper uses of the firm name, and signed by the three parties named.

On the 2d day of January, 1889, one Solomon Herzog, was "admitted into and made a partner in the firm existing under the title of Ward, Goldthwaite & Co., composed of the first three above named persons;" the partnership to continue "four years from January 1, 1889, unless sooner dissolved by mutual consent or operation of law." Remick had $18,000 in the business, "besides collateral

security held by a bank for the accommodation of said business for nominally $20,000." Herzog was to put in $10,000 by February 1, 1889. J. C. Goldthwaite agreed to "keep his capital already in said business up to the sum of $5,000," and against this Ward put "his long experience in buying and selling, and his skill, especially with the western trade, * * * in lieu of cash." No member was to "gamble, bet or speculate on any board of trade under penalty of forfeiting his rights," and no member was to "use the firm name for anything except strictly firm business." The articles of agreement were signed by the four parties.

On the 10th day of June, 1889, by bill of sale, Herzog sold out his interest, "with the consent, in writing, of Ward and Goldthwaite," to Remick.

Goldthwaite went out of the firm June 10, 1889. He was thereafter employed in the house until about the 24th of February, 1890.

The business was continued under the old firm name of "Ward, Goldthwaite & Co.," Goldthwaite acting as bookkeeper and sometimes as a salesman. That is, until February 28, 1890, the date of the deed of assignment.

Goldthwaite's first transaction with the bank was on March 1, 1889, when the Chicago Trust & Savings Bank made a loan of $2,500 for sixty days. This loan was discounted twelve times, and was finally paid in full.

The next transaction was June 1, 1889, a loan of $2,500 for one month. The next August 1, 1889, the same amount. To some of these, notes with the firm name of Ward, Goldthwaite & Co., and to some of them notes with the name of Ward, Goldthwaite & Co. thereon, were given as collaterals, and on some of them notes with the name of Goldfaite & Sons, of Marion, Indiana, as collateral.

On April 30, 1889, the bank loaned J. C. Goldthwaite $2,500 for thirty days. This was a personal loan with collateral. Tolman, the president of the bank, speaks of eight other transactions, to wit: One of August 25, August 31, September 30, October 25, October 30, December 6, December 21 and February 18. Some of these loans were per-

sonal loans to J. C. Goldthwaite, with the note of Ward, Goldthwaite & Co. given as collateral, and others were personal loans to J. C. Goldthwaite, with Goldfaite & Sons as collateral.

. The history of the note in suit at bar, is as follows : On the 23d of August, 1889, J. C. Goldthwaite, representing himself to be a member of the firm of Ward, Goldthwaite & Co., executed and delivered to the Chicago Trust & Savings Bank, the following promissory note :

" CHICAGO, February 18, 1890.

Thirty (30) days, no grace, after date, for value received, we promise to pay to the order of ourselves, twenty-five hundred dollars, with interest at the rate of eight per cent per annum, after due, having deposited with the legal holder hereof as collateral security, one note for $3,000, dated February 18, '90, due sixty days after date, made by Ward, Goldthwaite & Co., to order of James C. Goldthwaite, and by him indorsed, and we hereby give the said legal holder, his, her or their assign or assigns, authority to sell the same or any part thereof, on the maturity of this note, or at any time thereafter, or before, at public or private sale, without advertising the same, or demanding payment or giving notice, and to apply so much of the proceeds thereof to the payment of this note as may be necessary to pay the same, with all the interest due thereon, and also to the payment of all expenses attending the sale of the said collateral, and in case the proceeds of the sale of the same shall not cover the principal, interest and expenses, we promise to pay the deficiency forthwith after such sale, with interest at eight per cent per annum.  Said legal holder hereof, his, her or their assigns may purchase at any such sale.  And it is hereby agreed and understood, that if recourse is had to said collateral, any money realized on sale thereof in excess of the amount due upon this note, shall be applicable to the payment of any other note or claim which the said legal holder may have against us, and in case of any exchange of or addition to the collateral above named, the provisions of this note shall extend to such new or additional collateral.

And to further secure the payment of said amount, we

hereby authorize, irrevocably, any attorney of any court of record to appear for us in such court, in term time or vacation, at any time hereafter, and confess a judgment without process in favor of the holder of this note, for such amount as may appear to be unpaid thereon, together with costs and five per centum attorney's fees, and also to file a *cognovit* for the amount thereof, with an agreement therein, that no writ of error or appeal shall be prosecuted upon the judgment entered by virtue hereof, nor any bill in equity filed to interfere in any manner with the operations of said judgment, and to waive and release all errors which may intervene in any such proceedings, and consent to immediate execution upon such judgment; and also to waive all benefit or advantage to which we may be entitled, by virtue of any homestead or other exemption law now or hereafter in force in this or any other State or Territory where judgment may be entered by virtue hereof. Hereby ratifying and confirming all that said attorney may do by virtue hereof.

WARD, GOLDTHWAITE & Co.    [SEAL.]

$2,500.    JAMES C. GOLDTHWAITE.    [SEAL.]"

Upon the back of which are the following indorsements:

"April 5, 1890, sold the within described note to W. W. Charles for $250.

D. H. TOLMAN, Pres.

$2,250 due.    WARD, GOLDTHWAITE & Co.

24,778    JAMES C. GOLDTHWAITE."

The signatures upon this note were made by Goldthwaite in the presence of Tolman.

The check, less the discount, was made out to Ward, Goldthwaite & Co., and delivered to J. C. Goldthwaite there and then.

The following stipulation was made in this suit:

"It is stipulated and agreed that the check for the notes signed in the name of Ward, Goldthwaite & Co., of August 23, 1889, was delivered to J. C. Goldthwaite, and was made payable to Ward, Goldthwaite & Co., and that said Goldthwaite took said check and indorsed it in the name of

'Ward, Goldthwaite & Co.,' and drew the funds and wrongfully applied it to his own personal use, without the knowledge or consent of either Ward or Remick, or Tolman or the plaintiff."

Neither the firm of Ward, Goldthwaite & Co., its successor, Ward or Remick, ever had any dealing with appellant.

Remick testified that Tolman went to Ward and Remick's store on the 25th or 26th of February, 1890; it was the first time either of them had ever seen Tolman. He produced two sets of notes; one set consisting of the note sued on in this case, and the note sued on in the Charles-Remick case, (54 Ill. App. 116, 156 Ill. 327), the personal note of Goldthwaite for $2,500 and the $3,000 collateral thereto; the other set of notes, being another $2,500 note of J. C. Goldthwaite, and a $2,500 note collateral thereto of Goldfaite & Sons, of Marion, Indiana, dated November 8th. These four notes Tolman offered to sell to Remick for $2,500. " He (Tolman) said that he had $2,500 predicated on this paper, and that $2,500 would make him even, and wanted me to buy it for that. He wanted me to buy the whole four pieces of paper for $2,500. He said he had loaned upward of $2,500, and that Goldthwaite had put up that collateral note, dated November 18th, and that he had bought some other notes; that Goldthwaite had left that paper expecting to get the Goldfaite & Sons paper."

Goldfaite & Sons was a firm of Marion, Indiana, and was considered, and so Ward told Tolman, a firm good for a million.

Remick said to Tolman at the store : " It is a fortunate circumstance that you have that paper with that (Goldfaite & Sons) bogus signature on it, because it will probably be the means of your getting your money. I meant," says Remick, " that they would have too much fear of a prosecution for forgery. I told him I would not give five cents for the whole lot; that Goldthwaite was not a partner and had no authority to sign the paper."

Tolman went away, and Remick testifies: "About a month after, meeting me on Washington street, he said : ' I have got

that pay; that Goldfaite & Sons' note. I have got the $2,500.' I said: 'You are a good deal smarter about this thing than they were over at the American Savings Bank.'

Tolman replied: 'Yes, I have my pay; it was paid down at Marion, Indiana.' It was sent down there for collection; in other words, he got his money."

Tolman denies making the statements attributed to him by Remick.

The court found the issues for the defendant.

JOHN G. HENDERSON, attorney for appellant; MOSES, PAM & KENNEDY, of counsel.

" When a member of a partnership withdraws, if he fails to give notice of the fact, his liability will continue unless he can bring home notice to the person seeking to hold him liable. When he withdraws from the firm, he can terminate all future liability for its business, by giving notice to the correspondents of the firm, and, as to all others, by publishing a notice of the dissolution of the firm in the public newspapers of the neighborhood. Or, he may escape liability by proving that persons subsequently dealing with the firm had actual notice of his withdrawal or was not a member of the firm." Ellis' Admrs. v. Bronson, 40 Ill. 455; Trigerthan v. Lohrman, 6 Mo. App. 576; Bowen v. Rutherford, 60 Ill. 41; Frohlich, Gardt & Co. v. Alexander, 36 Ill. App. 434.

The burden of proof rests upon him who defends on the ground of dissolution, to prove notice of such fact. Abbott's Trial Ev., 222; Wade on Notice, 491, Sec. 530; Vernon v. Manhattan Co., 22 Wend. 193; Daniel's Neg. Instr., Sec. 3693; Southern v. Grimm, 67 Ill. 106; Podrasnik v. Martin & Co., 25 Ill. App. 303; Meyer et al. v. Krohn, 114 Ill. 574; Lovejoy v. Spafford, 93 U. S. 438, 442; Parsons on Partnership, 447, 448; Wardell v. Height, 2 Barb. 553; More v. Dixon, 59 Ill. App. 167, 170.

BARNUM, HUMPHREY & BARNUM, attorneys for appellee.

When the signing of the firm name by one partner in any transaction, after the partnership is dissolved, is done

outside the ordinary course of the firm business, notice of the dissolution is not necessary to the obligee, and the contract will be void.   Spruck v. Leonard, 9 Ill. App. 182; Hicks v. Russell, 72 Ill. 230; Bradley v. Linn, 19 Ill. App. 322; Daniel on Neg. Inst., Sec. 358; Chitty on Bills, 58; Block v. Price, 24 Mo. App. 14; 17 Am. & Eng. Enc., 1124, 1125, 1126; Clapp v. Rogers, 12 N. Y. 283; Merritt v. Williams, 17 Kans. 287; Vernon v. Manhattan Co., 22 Wend. 183; City Bank v. McChessney, 20 N. Y. 240; Hutchin v. Bank of Tennessee, 8 Humphreys (Tenn.), 418; Nussbaumer v. Becker, 87 Ill. 282; Kallenback v. Dickinson, 100 Ill. 436; Bank of Montreal v. Page, 98 Ill. 109.

Mr. Justice Waterman delivered the opinion of the Court.

This action is brought upon a forged signature to a promissory note.

Goldthwaite, who signed the name, Ward, Goldthwaite & Co., to the note, was not, when he did so, a member of the firm, nor had he any authority to sign such name, nor did the firm in any way receive any benefit from his signing, or have notice thereof.

Goldthwaite had been a member of the firm, and after his retirement therefrom, the remaining members had undoubtedly conducted themselves, by continuing to do business without notice of dissolution, and by the old name, so that to persons not having notice of his retirement, or that Goldthwaite was acting for himself alone, Ward and Remick would have been liable for what Goldthwaite did in the firm name.

Did appellant in respect to the note in suit, have such notice?

The note given to appellant was a judgment note, to which Goldthwaite signed the firm name, and also his own, all the signatures being made by Goldthwaite in the presence of Tolman, the president of the bank; it was payable to the order of the makers, and by Goldthwaite indorsed as it was signed.

Appellant knew that, unless specially authorized, Goldthwaite could not execute in the firm name a valid power of attorney to confess judgment; it also knew that if Goldthwaite was a member of the firm, he was bound by the firm signature without affixing his individual name.

We are not now called upon to say what we should have found had the case been tried before us, but whether the evidence is such that this court must set aside the finding of the Circuit Court that appellant had notice that Goldthwaite made the firm signature and obtained money thereon for his own private use; taking all the facts into consideration, we can not so say.

Remick, in testifying to the conversation had with Tolman at Remick & Ward's store on February 26th or 27th, said:

"The conversation was substantially this: He said that he had $2,500 predicated on this paper (the four notes), and that $2,400 would make him even and wanted me to buy it for that. He wanted me to buy the whole four pieces of paper for $2,500. He said he had loaned upward of $2,500, and that Goldthwaite had put up that collateral note dated November 18th, and that he had bought some other notes; that Goldthwaite had left that paper expecting to get the Goldfaite & Sons paper; that Tolman said he played sharp on him, and after he got the four notes he kept them."

Ward, referring to the conversation with Tolman at the store—the conversation testified to by Remick, said: * * * "and Tolman said he wanted to get twenty-five hundred dollars on this sale, and that if he would give him that he would give up the notes, and there was four of them."

These two (meaning the note in suit and the one sued on in Charles v. Remick, *supra*), were two of the four. "The other two are in the hands of the firm of Goldfaite & Sons, of Marion, Indiana. I saw them the other day."

Tolman denies this.

The court below saw and heard the witnesses; we can

not say that it was not warranted in finding, as we must presume it did, that appellant has received all that it loaned upon the faith of the forged signature of Ward, Goldthwaite & Co.

We do not regard the stipulation as an agreement that appellant did not have notice that Goldthwaite was using the firm name to obtain money for his private use.

The stipulation is merely that neither Tolman nor appellant consented or knew that he, Goldthwaite, wrongfully applied the money to his personal use.

If appellant had notice that Goldthwaite intended to apply the money to his personal use, although it may have believed that the firm had consented thereto, and that there would be no wrong in so doing, nevertheless it assumed the risk of there being such consent.

Appellant gave to Goldthwaite for the note a check payable to the order of Ward, Goldthwaite & Co., but as we understand, this check was upon appellant, and was by it paid.

The question in this regard turns upon whether appellant had notice that Goldthwaite was using the firm name for his personal ends. The previous dealing and all circumstances taken into consideration, we can not say that the Circuit Court erred in finding the existence of such notice.

The judgment of the Circuit Court is therefore affirmed.